IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Senior Judge Wiley Y. Daniel**

Civil Action No.   15-cv-00220-WYD-MJW

SAMI RAGAB, an individual,

      Plaintiff,

v.

MUHAMMAD HOWARD, individually and in his capacity as owner, partner, and
corporate officer; and
ULTEGRA FINANCIAL PARTNERS, INC., a Colorado corporation; and
SEED CONSULTING, LLC, d/b/a SEED CAPITAL, a Nevada limited liability company,

      Defendants.

---

### ORDER

---

## I.   INTRODUCTION

THIS MATTER is before the Court on Defendants Muhammad Howard

["Howard"] and Ultegra Financial Partners, Inc.'s ["Ultegra"] [collectively "the Ultegra

Defendants"] Motion to Compel Arbitration and Motion to Dismiss Plaintiff's Claims or, in

the Alternative, Stay Plaintiff's Claims filed April 13, 2015.  A response was filed on May

5, 2015, a reply was filed on May 19, 2015, and a surreply was filed with leave of the

Court on June 18, 2015.  On October 9, 2015, Magistrate Judge Watanabe granted the

Ultegra Defendants' motion to stay discovery pending a ruling on the motion to compel

arbitration.

Additionally, the parties were asked to brief the impact of an Amended Complaint

filed on June 24, 2015, that added Defendant Clive Funding Inc. ["Clive Funding"].

Briefs were filed on this issue on July 7, 2015.  On October 14, 2015, Defendant Clive

Funding filed a Motion to Compel Arbitration and Motion to Dismiss Plaintiff's Claims

Pursuant to Rule 12(b)(1) or, in the Alternative, Stay Plaintiff's Claims.  It also filed a

motion to stay discovery, which was granted on October 22, 2015.  Thus, discovery is

currently stayed as to all Defendants except Seed Consulting, LLC ["Seed Consulting"]

pending rulings on the motions to compel arbitration.

The Ultegra Defendants' motion notes that Plaintiff entered into several

agreements, all of which contained provisions requiring the parties to submit claims and

disputes between them to binding arbitration.  (Am. Motion to Compel Arbitration and

Mot. to Dismiss Pl.'s Claims or, in the Alternative, Stay Pl.'s Claims ["Am. Mot."], Ex. A,

Howard Decl., ¶¶ 1-8) (verifying the agreements attached as Exhibits B through H to the

motion.)  The motion further asserts that all of Plaintiff's claims, including alleged

violations of the Credit Repair Organization Act, Colorado Credit Services Organization

Act, and Colorado Uniform Debt-Management Services Act, and negligent

misrepresentation, fraudulent misrepresentation, and piercing the corporate veil, fall

within the broad scope of the arbitration provisions in the written agreements.  Thus, the

Ultegra Defendants request that the Court compel arbitration of this dispute and dismiss

Plaintiff's claims under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction or,

alternatively, stay these proceedings pending arbitration.

Clive Funding's motion incorporates the arguments made in the Ultegra

Defendants' motion, and asserts that the only places where Clive is mentioned in the

Amended Complaint are in conjunction with the Ultegra Defendants.  Accordingly, if

arbitration is compelled with respect to Ultegra and Howard, Clive Funding asserts

arbitration should also be compelled with respect to it.

II.   <u>FACTS</u>

As referenced in the Amended Complaint, on or about March 11, 2013, Ultegra

and Phoneless, LLC ["Phoneless"], in which Plaintiff was a member, entered into a

Consulting Agreement.  (*See* Am. Compl., Ex. 1, unsigned copy of the Agreement; Am.

Mot., Ex. B.)  Although the preamble on page one of the Consulting Agreement

identifies Phoneless as the "Client", the signature block on the final page of the

Agreement identified the "Client" as Sami Ragab, the Plaintiff.  (*Id.* at pp. 1, 6.)  The

Consulting Agreement states:

> 7.8    Enforcement and Arbitration.  Actions to enforce payment of
> amounts due under this Agreement, at the option of Consultant,
> and actions for injunctive relief may be brought in a court of
> competent jurisdiction.  If it is necessary to Consultant to seek
> injunctive relief or to collect any fees, costs or other charges due to
> the Consultant by the Client, the Client agrees to pay the
> Consultant's attorney 's fees, costs and other charges incurred in
> collecting the amount owed. The Client further authorizes the filing
> of charging and/or retaining liens, as applicable and to the
> extent such authorization is necessary.

> 7.8.1.  Arbitration.  Any other question, disagreement, difference, or controversy
> which arises among the parties hereto, with respect to this Agreement, the
> Services or any other manner, shall be submitted to and determined by
> binding arbitration.  All arbitration under this Section 12.13 [sic] shall
> proceed as follows: the parties in dispute shall agree on and appoint one
> neutral arbitrator within thirty days after a written request for arbitration
> has been given by one party to the other. If the parties do not agree and
> fail to appoint such neutral arbitrator within the thirty day period, the
> arbitrator shall be appointed by a court of competent jurisdiction of the
> State of Colorado, upon the application of either party.  Except as set forth
> in this Agreement, each party shall pay their own attorneys' fees and costs
> related to such Arbitration. Subject to the provisions set forth within this

> Section 12.13 [sic], the arbitration shall be governed by the Uniform
> Arbitration Act of 1975, C.R.S. § 13-22-201 et seq., as it exists on the
> effective date of this Agreement and it may be thereafter amended.

The Consulting Agreement concerned Ultegra's agreement to assist Plaintiff obtain financing and raise capital for Phoneless.  (Mot. to Compel Arbitration, Ex. A at ¶¶ 1.1-1.3.)  The Ultegra Defendants contend that the main thrust of the Complaint concerns Ultegra's conduct in assisting Plaintiff obtain financing and raise capital for Phoneless, including helping repair Plaintiff's credit so he could raise the capital he needed.  (*See* Am. Compl., ¶¶ 13-51.)  The Consulting Agreement contained a Personal Guarantee by Plaintiff in which he agreed and consented to all of the terms in the Agreement.  (*Id.*, ¶ 24, Am. Mot. to Compel Arbitration, Ex. B.)

A Membership Interest Purchase Agreement was also entered into, which according to the Ultegra Defendants was drafted by Plaintiff's attorney.   While the Agreement states in the opening paragraph that it is entered into between Plaintiff and Ultegra, the Agreement is signed by Plaintiff, as the Seller, and Howard, as the Purchaser.  (Am. Mot. to Compel Arbitration, Ex. C.)  Paragraph 9 of the Membership Purchase Agreement contains an arbitration provision providing in pertinent part:

> In the event a dispute arises over any matters arising out of or relating to
> the subject matter of this Purchase Agreement, which cannot be resolved
> by the parties hereto, then the existence of said dispute shall first be
> confirmed by written notice of the dispute by any such party to the
> other(s).   ... If such dispute has not been resolved ... then said dispute
> shall be resolved by binding arbitration ...

The Membership Interest Purchase Agreement memorialized the Ultegra Defendants' agreement to purchase 50% of the membership interest in Phoneless in

exchange for payment of $100.00 to Plaintiff.  (Am. Mot., Ex. C at p. 1, Recitals and ¶ 1.)  The motion notes that Plaintiff has made several allegations in his Complaint about the circumstances surrounding the Ultegra Defendants' purchase of 50% of Phoneless, and seeks damages in connection with his sale of the 50% interest to the Ultegra Defendants.  (Am. Compl., ¶¶ 59, 63, 69, 74, 82, 90, 94, 99, 107, and 109.)

An Operating Agreement was also entered into by Plaintiff, the initial member of Phoneless, which again according to the Ultegra Defendants was drafted by Plaintiff's attorney.  (Am. Mot., Ex. D.)  Article XIII of the Operating Agreement, titled "Dispute Resolution", contains an arbitration agreement stating in pertinent part:

> In the event a disagreement arises out of any matters arising out of or relating to the subject matter of this Agreement, which cannot be resolved by the majority vote of the Membership Interest, ... then said disagreement shall be resolved by binding arbitration, initiated by any Members, at **Denver, Colorado**, U.S.A., conducted by a sole arbitrator chosen by the American Arbitration Association ("AAA") and otherwise through and administered by the AAA pursuant to its then current Commercial Arbitration Rules.

(*Id.* at p. 9) (emphasis in original.)  The First Amendment to the Operating Agreement formally made Ultegra a party to the Agreement.  (Am. Mot., Ex. E.)  It was signed by Howard.

The Operating Agreement and First Amendment thereto memorialized, among other things, the operational structure of the LLC and the obligations and rights of the members and the management of the LLC, including the obligation of Plaintiff to personally guarantee the initial $80,000.00 in capital raised for Phoneless.  (Am. Mot., Exs. D and E at ¶¶ 7 and 16 (agreement to be bound by Operating Agreement and any

amendments thereto "without limitation")).  The Ultegra Defendants assert that Plaintiff

made several allegations in his Complaint concerning the operations of Phoneless, and

the obligations and rights of the members and management of Phonless, including

Plaintiff's agreement to personally guarantee the initial $80,000.00 in financing obtained

for Phoneless and how the debt would be structured (Am. Compl., ¶¶ 18-21), and

Ultegra's alleged obligations to provide funding and pay for debts incurred by Plaintiff

(*id.*, ¶¶ 36 and 42.)

Plaintiff and Ultegra also entered into an Assignment of Limited Liability

Company Membership Interest ["Assignment"], which again was purportedly drafted by

Plaintiff's attorney.  (Am. Mot., Ex. F.)  It was signed by Howard.  The Assignment

contains an arbitration provision at paragraph 6, stating in pertinent part:

> In the event a disagreement arises out of any matters arising out of or
> relating to the subject matter of this Assignment, which cannot be resolved
> by the parties hereto, ... then said disagreement shall be resolved by
> binding arbitration, initiated by any party, at Denver, Colorado, conducted
> by a sole arbitrator chosen by the American Arbitration Association
> ("AAA"), and otherwise through and administered by the AAA pursuant to
> its then current Commercial Arbitration Rules.

(*Id.* at ¶ 6, pp. 2-3.)

The Assignment concerned the sale of Plaintiff's 50% membership interest in

Phoneless to the Ultegra Defendants, and referenced the Membership Interest

Purchase Agreement, the First Amendment to the Operating Agreement of the

Company, a Joinder Agreement, and the Operating Agreement.  (Am. Mot., Ex. F at p.

1, "Recitals", and ¶¶ 1-2.)  Again, the Ultegra Defendants assert that Plaintiff's

Complaint makes several allegations and claims pertaining to the sale of the 50%

interest of Plaintiff's membership interest in Phoneless to the Ultegra Defendants, the operations of Phoneless, and the parties' roles and obligations to each other and Phoneless.  (Am. Compl., ¶¶ 18-21, 36-42, 59, 63, 69, 74, 82, 90, 94, 99, 107, and 109.)

Plaintiff also entered into an Employment Agreement concerning his employment with Phoneless.  (Am. Mot., Ex. G.)  The Employment Agreement contains an agreement to arbitration, stating in pertinent part, "Any claim or controversy that arises out of or relates to this agreement, or the breach thereof, shall be settled by arbitration in accordance with the rules of the American Arbitration Association."  (*Id.* at ¶ 8.)  The Employment Agreement contained terms relating to Plaintiff's salary, bonus, and role. The Complaint includes allegations and claims relating to payment of Plaintiff's salary. (Am. Compl., ¶¶ 40 and 42.)

Finally, Plaintiff entered into a "Non Circumvention, Non Disclosure & Confidentiality Agreement (the "Non-Circumvention Agreement) with Ultegra.  (Am. Mot., Ex. H.)  The Non-Circumvention Agreement contains an agreement to arbitrate, stating in pertinent part:

> By executing this agreement, **All Parties** irrevocably agrees [sic] that any controversy, claim, or dispute arising out or relating to any part or the whole of this agreement or breach thereof is to be exclusively and finally settled by arbitration under the Rules of the Colorado Court.

(*Id.* at p. 4, ¶ 9.13) (emphasis in original.)

The Non-Circumvention Agreement concerned the handling of Plaintiff's and Ultegra's confidential information, as well as the parties' promise not to circumvent the

other with respect to obtaining any financing.  (Am. Mot., Ex. H, generally and at ¶ 8.)

The Complaint contains allegations that Plaintiff obtained additional loans and

attempted to open new bank accounts without involving Ultegra in the process or

decision.  (Am. Compl., ¶¶ 48 and 50.)

III.    ANALYSIS

        The Federal Arbitration Act provides that "[a] written provision in any . . . contract

evidencing a transaction involving commerce to settle by arbitration a controversy there

after arising out of such contract or transaction, . . . shall be valid irrevocable and

enforceable, save upon such grounds as exist at law or in equity for the revocation of

any contract."  9 U.S.C. § 1.  "There is a strong federal policy encouraging the

expeditious and inexpensive resolution of disputes through arbitration".  *Metz v. Merrill*

*Lynch, Pierce, Fenner & Smith, Inc.*, 39 F.3d 1482, 1488-89 (10th Cir. 1994).  To this

end, courts must interpret arbitration clauses liberally, and all doubts must be resolved

in favor of arbitration.  *Armijo v. Prudential Ins. Co. of America*, 72 F.3d 793, 798 (10th

Cir. 1995).

        However, "arbitration is a matter of contract and a party cannot be required to

submit to arbitration any dispute which he has not agreed to submit."  *United*

*Steelworkers of Am. v. Warrior and Gulf Navigation Co.*, 363 U.S. 574, 582 (1960).  The

parties' intent to arbitrate controls, and determining this intent is a question of law for the

Court to decide.  *Armijo*, 72 F.3d at 798.  In deciding this issue, courts generally should

apply ordinary state-law principals that govern the formation of contracts.  *First Options*

*of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

Under Colorado law, "in order to establish the existence of a contract, the evidence must show that the parties agreed upon all essential terms." *I.M.A., Inc. v. Rocky Mountain Airways, Inc.*, 713 P.2d 882, 888 (Colo. 1986). "The parties' agreement is evidenced by their manifestations of mutual assent." *Id.* "[E]vidence of the parties' conduct, their oral statements and their writings, and other evidence illuminating the circumstances surrounding the making of an agreement are admissible to clarify the intent and purpose of the parties." *Id.* The Colorado Supreme Court has held that "[t]he court can supply some elements in a contract, but they cannot make one; and when the language in a contract is too uncertain to gather from it what the parties intended, the courts cannot enforce it.*" Newton Oil Co. v. Bockhold*, 176 P.2d 904, 908 (Colo. 1947). "A court will not undertake to enforce a contract, unless by some lawful means it can ascertain and know just what the contract bound each party to do." *Id.*

In the case at hand, it is undisputed that Plaintiff and Defendant Ultegra entered into numerous agreements that required arbitration regarding disputes.[1]  I also find that the disputes at issue in the complaint arguably fall within the scope of the agreements to arbitrate. *See Nat'l Am. Ins. Co. v. SCOR Reinsurance Co.*, 362 F.3d 1288, 1290 (10th Cir. 2004).  As the Ultegra  Defendants note, Plaintiff's allegations and claims concern, among other things: (a) the sale of 50% interest in Phoneless to the Ultegra Defendants, which arguably arises out of or relates to the Membership Interest Purchase Agreement and the Assignment; (b) the operations of Phoneless; the obligations and rights of the members and management of Phoneless, including Plaintiff's agreement to personally

---

[1] There is a dispute about whether Defendant Howard was a party to any of the agreements.

guarantee the initial $80,000.00 in financing obtained for Phoneless and how the debt would be structured; and Ultegra's alleged obligations to provide additional funding, which arguably which arise out of or relate to the Operating Agreement and First Amendment thereto; (c) payment of Plaintiff's salary which arguably arises out of or relates to the Employment Agreement; and (d) additional loans and new bank accounts that Plaintiff obtained or attempted to obtain without involving the Ultegra Defendants in the process which arguably arises out of or relates to the Non-Circumvention Agreement. Plaintiff has not disputed this for purposes of the Ultegra Defendants' motion.

The problem, however, is that the agreements differ and conflict as to the terms and manner of arbitration and, as Defendants have pointed out, the claims implicate all of the agreements discussed in this Order. Thus, it is impossible to single out one agreement as the controlling one on arbitration.

Plaintiff has identified 74 independent ways in which the six arbitration clauses are not only ambiguous in relation to one another but also inconsistent. (Pl.'s Opp'n to Am. Mot. to Compel, Exs. B-E.) For example, as to the rules governing the arbitration, the Consulting Agreement states that the parties "shall agree on and appoint one neutral arbitrator within thirty days after a written request for arbitration", and if the parties do not agree, "the arbitrator shall be appointed by a court of competent jurisdiction of the State of Colorado. . . ." (Am. Mot., Ex B, p. 6.) The Consulting Agreement also states that the arbitration is to be governed by the Uniform Arbitration Act of 1975, C.R.S. § 13-22-201 et seq. In contrast, under the Membership Interest Purchase Agreement, the Operating Agreement and the Assignment, the arbitration is to be conducted by a sole arbitrator

chosen by the American Arbitration Association ("AAA") and administered by the AAA pursuant to its then current Commercial Arbitration Rules.  The Employment Agreement and Non-Circumvention Agreement are silent as to who the arbitrators are or how they are chosen.  The Employment Agreement provides that the arbitration shall be governed by the rules of the American Arbitration Association whereas the Non-Circumvention Agreement states that the arbitration is to be governed by the Rules of the Colorado Court.  It is impossible to reconcile these different requirements.

Another difference in the agreements relates to notice of the dispute.  The Membership Interest Purchase Agreement and Assignment state that the parties must give written notice of any dispute, and the disagreeing parties have ten calender days from receipt of the written notice to resolve the dispute before it is submitted to arbitration.  By contrast, the  Operating Agreement states that after written notice of a disagreement, the parties have 30 calendar days to resolve the disagreement.  The other agreements are silent as to this issue.

There are also differences in regard to attorney fees.  Under the Operating Agreement, Membership Interest Purchase Agreement, and Assignment, the prevailing party shall be entitled to recover reasonable attorneys' fees and other costs.  The Consulting Agreement, however, gives a unilateral right for the Consultant, Ultegra, to obtain attorney's fees and costs for non-payment claims, and authorization to file charging and/or retaining liens.  (Am. Mot., Ex. B, p. 5.)  No such provision is in any of the other agreements.  With the exception of Ultegra's right of Ultegra to recover fees

and costs for non-payment claims, the Consulting Agreement states that "each party is to pay their own attorneys' fees and costs related to such Arbitration." (*Id.*, p. 6.)

Based on the foregoing, I agree with Plaintiff that there was no actual agreement to arbitrate, as there was no meeting of the minds as to how claims that implicated the numerous agreements, as here, would be arbitrated. Courts have found in similar situations where parties have entered into multiple agreements containing conflicting arbitration clauses that as a matter of law there was no meeting of the minds with respect to dispute resolution and none of the arbitration clauses were enforceable. Thus, in *Bellman v. i3Carbon, LLC*, 563 F. App'x 608, 614 (10th Cir. 2014), the Tenth Circuit held that conflicting provisions regarding arbitration in an agreement rendered the alleged obligation to arbitrate unenforceable because of a failure to demonstrate a "meeting of the minds", noting that this was "consistent with the approach taken by other courts. *Id.* at 614 n. 2 (citing *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.,* 838 F. Supp. 2d 967, 992 (C.D. Cal. 2012) (refusing to compel arbitration where two documents contained conflicting arbitration provisions that were "not only ambiguous" but also "fundamentally incompatible"); *Rockel v. Cherry Hill Dodge,* 368 N.J.Super. 577, 847 A.2d 621, 623–24 (N.J. Super. Ct. App. Div. 2004) (holding that where "parties executed two documents which contain separate and somewhat disparate arbitration clauses [, t]his ambiguity ... is fatal to the compelling of the arbitration of plaintiffs' ... claims")).

The Ultegra Defendants argue that the above cases are factually distinguishable from this case because they involved conflicting provisions regarding whether the claims

should be heard in court or through arbitration, whereas here all the agreements required arbitration. I disagree. First, the *Rockel* case involved two conflicting provisions as to arbitration. Moreover, other courts have held that conflicting arbitration provisions are not sufficient to create a meeting of the minds regarding arbitration. Thus, in *NAACP of Camden Cnty. East v. Foulke Mgmt. Corp.*, 24 A.3d 777, (N.J. Sup. Ct. App. Div. 2011), the court severed arbitration provisions rendering them unenforceable because "the assorted [agreements] are too plagued with confusing terms and inconsistencies to put a reasonable consumer of fair notice of their intended meaning" and "do not plainly convey–with precision and consistency–what the exact terms and conditions of th[e] arbitration process would be." Similarly, in *Basulto v. Hialeah Automotive*, 141 So. 3d 1145, 1150 (Fla. 2010), the court found that there was no meeting of the minds regarding multiple arbitration clauses when they were "conflicting in their essential provisions", including use of a single arbitrator versus a panel of three arbitrators and in "the methods for selecting arbitrators . . . as what law or procedure would govern the arbitration proceeding").

In short, the Ultegra Defendants have not shown that the parties agreed upon all essential terms related to arbitration. *I.M.A., Inc.*, 713 P.2d at 888. The terms of arbitration in the various agreements differ and conflict, and the language is thus too uncertain to enforce arbitration. *Newton Oil Co.*, 176 P.2d at 908. While the Ultegra Defendants argue that the court should allow the arbitrators to work out the details of arbitration, that is not appropriate. There are "genuine issues of material fact regarding the parties' agreement", meaning that the motion to compel arbitration must be denied.

*See Hancock v. Am. Tel. and Tel. Co., Inc.*, 701 F.3d 1248, 1261 (10th Cir. 2012) (noting that framework for deciding motion to compel arbitration "is similar to summary judgment practice", that the defendants, as the moving party, have the burden to show that the arbitration clauses apply, and that if that burden was met, plaintiff "could attempt to rebut that showing with evidence establishing a genuine dispute as to whether the provisions apply").

Based on the foregoing, I find that the Ultegra Defendants' Motion to Compel Arbitration and Motion to Dismiss Plaintiff's Claims or, in the Alternative, Stay Plaintiff's Claims must be denied.  Since Clive Funding's motion to compel arbitration incorporates the Ultra Defendants' arguments in their motion, it also must be denied.  Clive Funding's other argument that Plaintiff should be estopped from avoiding arbitration by adding a third party is denied as moot in light of the fact that I found no binding arbitration provisions to enforce.

It is therefore

ORDERED that Defendants Muhammad Howard and Ultegra Financial Partners, Inc.'s Motion to Compel Arbitration and Motion to Dismiss Plaintiff's Claims or, in the Alternative, Stay Plaintiff's Claims (ECF No. 21) is **DENIED**.  It is

FURTHER ORDERED that Defendant Clive Funding, Inc.'s Motion to Compel Arbitration and Motion to Dismiss Plaintiff's Claims or, in the Alternative, Stay Plaintiff's Claims (ECF No. 51) is **DENIED**.

Dated:  November 2, 2015

BY THE COURT:


s/ Wiley Y. Daniel
Wiley Y. Daniel
Senior United States District Judge